UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AYUDA, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>DEPARTMENT OF HOMELAND<br>SECURITY, et al.,<br><br>    Defendants. | Civil Action No. 24-1153 (JMC) |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, the Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services ("USCIS"), Immigration and Customs Enforcement ("ICE"), Department of Justice ("Department"), and the Executive Office for Immigration Review ("EOIR") respectfully move pursuant to Federal Rule of Civil Procedure 56 for summary judgment in this Freedom of Information Act ("FOIA") case brought by Plaintiff Ayuda, Inc. As explained in the accompanying brief and supporting materials, USCIS, ICE, and EOIR conducted reasonable searches and sent all relevant records to the plaintiff with proper withholdings; therefore, Defendants are entitled to summary judgment. In support of this motion, Defendants rely on the accompanying memorandum of points and authorities, a statement of undisputed facts, and the attached declarations and exhibits hereto.

Dated: October 21, 2024
Washington, D.C.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: /s/ *Brenda González Horowitz*
    BRENDA GONZÁLEZ HOROWITZ
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2512

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AYUDA, INC.,<br><br>       Plaintiff,<br><br>  v.<br><br>DEPARTMENT OF HOMELAND<br>SECURITY, et al.,<br><br>       Defendants. | Civil Action No. 24-1153 (JMC) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. I

TABLE OF AUTHORITIES ....................................................................................................... ii

FACTUAL AND PROCEDURAL BACKGROUND ................................................................. 2

LEGAL STANDARD .................................................................................................................. 3

ARGUMENT ............................................................................................................................... 5

     I.     Defendants Conducted Adequate Searches ........................................................... 5

     II.    Defendants Properly Invoked FOIA Exemptions (b)(6), (b)(7)(C), & (b)(7)(E) and Privacy Act Exemption (k)(2) .................................................................................. 10

          A.     ICE and USCIS Properly Invoked FOIA Exemptions 6 and 7(C) ........... 10

          B.     ICE and USCIS Properly Invoked Exemption 7(E) ................................. 16

          C.     USCIS Properly Invoked Privacy Act Exemption (k)(2) ......................... 18

     III.   Defendants Met Their Segregability Burden ....................................................... 22

CONCLUSION ......................................................................................................................... 23

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*100 Reps. v. Dep't of State*,
  602 F. Supp. 3d 41 (D.D.C. 2022) ............................................................................ 18

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................. 3

*Baker & Hostetler LLP v. Dep't of Com.*,
  473 F.3d 312 (D.C. Cir. 2006) ........................................................................... 5, 6

*Bartko v. Dep't of Just.*,
  164 F. Supp. 3d 55 (D.D.C. 2016) .......................................................................... 9

*Bartko v. Dep't of Just.*,
  167 F. Supp. 3d 55 (D.D.C. 2016) ........................................................................ 14

*Beck v. Dep't of Just.*,
  997 F.2d 1489 (D.C. Cir. 1993) ........................................................................... 11

*Blackwell v. FBI*,
  646 F.3d 37 (D.C. Cir. 2011) .............................................................................. 17

*Boyd v. Dep't of Just.*,
  475 F.3d 381 (D.C. Cir. 2007) ............................................................................ 15

*Brayton v. Office of U.S. Trade,*
  *Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ...................................................................... 4

*Budik v. Dep't of Army*,
  742 F. Supp. 2d 20 (D.D.C. 2010) .......................................................................... 9

*Buzzfeed, Inc. v. Dep't of Homeland Sec.*,
  610 F. Supp. 3d 139 (D.D.C. 2022) ...................................................................... 18

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................. 4

*Clemente v. FBI*,
  741 F. Supp. 2d 64 (D.D.C. 2010) .................................................................... 17, 18

*Concepcion v. FBI*,

    606 F. Supp. 2d 14 (D.D.C. 2009) ........................................................................ 14

*CREW v. Dep't of Just.*,

    746 F.3d 1082 (D.C. Cir. 2014) ..................................................................... 11, 12

*Ctr. for Investigative Reporting v. Customs & Border Prot.*,

    436 F. Supp. 3d 90 (D.D.C. 2019) .......................................................................... 4

*Davis v. Dep't of Just.*,

    968 F.2d 1276 (D.C. Cir. 1992) ............................................................................ 11

*Defenders of Wildlife v. Border Patrol*,

    623 F. Supp. 2d 83 (D.D.C. 2009) .......................................................................... 4

*Dep't of Def. v. Fed. Lab. Rel. Auth.*,

    510 U.S. 487 (1994) .............................................................................................. 13

*Dep't of Just. v. Reps. Comm. for Freedom of the Press*,

    489 U.S. 749 (1989) ................................................................................... 4, 11, 14

*Dep't of State v. Wash. Post Co.*,

    456 U.S. 595 (1982) ....................................................................................... 10, 16

*Doe v. FBI*,

    936 F.2d 1346 (D.C. Cir. 1991) ..................................................................... 19, 20

*Gun Owners of Am. v. FBI*,

    Civ. A. No. 22-3379 (JEB), 2024 WL 195829 (D.D.C. Jan. 18, 2024) ............ 16, 18

*Holcomb v. Powell*,

    433 F.3d 889 (D.C. Cir. 2006) .......................................................................... 3, 4

*Iturralde v. Comptroller of Currency*,

    315 F.3d 311 (D.C. Cir. 2003) ........................................................................... 5, 9

*Jefferson v. Dep't of Just.*,

    284 F.3d 172 (D.C. Cir. 2002) ............................................................................. 14

*Jud. Watch Inc., v. Dep't of Just.*,

    319 F. Supp. 3d 431 (D.D.C. 2018) ....................................................................... 9

*Judicial Watch v. Rossotti*,

    285 F. Supp. 2d 17 (D.D.C. 2003) ......................................................................... 5

*Kimberlin v. Dep't of Just.*,

    139 F.3d 944 (D.C. Cir. 1998) ............................................................ 15

*King v. Dep't of Just.*,

    830 F.2d 210 (D.C. Cir. 1987) ............................................................ 21

*Larson v. Dep't of State*,

    565 F.3d 857 (D.C. Cir. 2009) .............................................................. 4

*Lindsey v. FBI*,

    490 F. Supp. 3d 1 (D.D.C. 2020) ........................................................ 15

*Martin v. Dep't of Just.*,

    488 F.3d 446 (D.C. Cir. 2007) ............................................................ 14

*Mead Data Cent., Inc. v. Dep't of Air Force*,

    566 F.2d 242 (D.C. Cir. 1977) ...................................................... 22, 23

*Mobley v. CIA*,

    806 F.3d 568 (D.C. Cir. 2015) .............................................................. 5

*Montenegro v. FBI*,

    Civ. A. No. 16-1400, 2017 WL 2692613 (E.D. Va. June 22, 2017) ........................ 21

*Nation Mag. v. Customs Serv.*,

    71 F.3d 885 (D.C. Cir. 1995) ......................................................... 5, 14

*Nat'l Archives & Recs. Admin. v. Favish*,

    541 U.S. 157, 172 (2004) ................................................................ 15

*Neufeld v. IRS*,

    646 F.2d 661 (D.C. Cir. 1981) ............................................................ 23

*Nova Oculus Partners, LLC v. SEC*,

    486 F. Supp. 3d 280 (D.D.C. 2020) ...................................................... 11

*Oglesby v. Dep't of Army*,

    920 F.2d 57 (D.C. Cir. 1990) ......................................................... 5, 9

*Perry v. Block*,

    684 F.2d 121 (D.C. Cir. 1982) ............................................................. 6

*Pratt v. Webster*,

    673 F.2d 408 (D.C. Cir. 1982) ...................................................... 20, 21

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ................................................................. passim

*Schrecker v. Dep't of Just.*,
    349 F.3d 657 (D.C. Cir. 2003) ................................................................. 14

*Scott v. Harris*,
    550 U.S. 372 (2007) ................................................................. 3

*Shaw v. FBI*,
    749 F.2d 58 (D.C. Cir. 1984) ................................................................. 20, 21

*Singh v. FBI*,
    574 F. Supp. 2d 32 (D.D.C. 2008) ................................................................. 14

*Steinberg v. Dep't of Just.*,
    23 F.3d 548, 551 (D.C. Cir. 1994) ................................................................. 5, 9

*Valencia-Lucena v. Coast Guard*,
    180 F.3d 321 (D.C. Cir. 1999) ................................................................. 5

*Vymetalik v. FBI*,
    785 F.2d 1090 (D.C. Cir. 1986) ................................................................. 20

*Weisberg v. Dep't of Just.*,
    745 F.2d 1476 (D.C. Cir. 1984) ................................................................. 5

*Willis v. FBI*,
    Civ. A. No. 17-1959 (KBJ), 2019 WL 2138036 (D.D.C. May 16, 2019) ................................ 10

**Statutes**

5 U.S.C. § 552(b) ................................................................. 22

5 U.S.C. § 552(b)(6) ................................................................. 10

5 U.S.C. § 552(b)(7)(C) ................................................................. 11

5 U.S.C. § 552(b)(7)(E) ................................................................. 16

5 U.S.C. § 552a(j)(2) ................................................................. 19

5 U.S.C. § 552a(k) ................................................................. 18

5 U.S.C. § 552a(k)(2) ................................................................. 19

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................. 1, 3

Fed. R. Civ. P. 56(c)(1) ............................................................................................. 4

Defendants the Department of Homeland Security ("DHS"), Citizenship and Immigration Services ("USCIS"), Immigration and Customs Enforcement ("ICE"), the Department of Justice ("Department"), and Executive Office for Immigration Review ("EOIR"), (collectively "Defendants") by and through the undersigned counsel, respectfully submit this memorandum of points and authorities in support of Defendants' motion for summary judgment.

Plaintiff Ayuda, Inc. ("Plaintiff") submitted Freedom of Information Act ("FOIA") requests seeking records from USCIS, ICE, and EOIR. *See* ECF No. 1 (Compl.) ¶¶ 20, 26, 29. More specifically, Plaintiff sought records and information regarding Ms. Areccy Aguilar Rivera's immigration file, including a removal order and record of proceedings relating to events that occurred when Ms. Rivera entered the United States in 2013. *See id.* ¶¶ 11, 20, 26, 29.  As explained further below, USCIS, ICE, and EOIR searched all areas reasonably calculated to uncover relevant records. EOIR found no responsive records. *See* Declaration of Matthew J. Broussard at 8 ("Broussard Decl.").  USCIS and ICE found responsive documents and released them to Plaintiff with applicable withholdings. *See* Declaration of Fernando Pineiro at 3 ("Pineiro Decl.") (ICE); *see also* Declaration of James Baxley ("Baxley Decl.") (USCIS).  Plaintiff contends that Defendants' searches were deficient because none of the agencies produced a removal order, but as a record produced by ICE demonstrates, there was no such removal order. Thus, the agencies' searches were reasonably calculated to locate all responsive documents and the agencies have fully complied with their search obligations under FOIA. Moreover, the limited information that was withheld was proper pursuant to FOIA Exemptions 6, 7(C), 7(E), and Privacy Act Exemption (k)(2). The Court should therefore enter judgment as a matter of law in favor of Defendants.

## FACTUAL AND PROCEDURAL BACKGROUND

Ms. Aguilar Rivera entered the United States with her father in October 2013, when she was approximately fifteen years old.  Compl. ¶ 11. As they entered, Customs and Border Patrol apprehended Ms. Rivera and her father and served them with a Notice to Appear, dated October 21, 2013.  *Id.* ¶ 12.  Subsequently, Ms. Rivera and her father moved to Virginia.  *Id.* ¶ 13.  Plaintiff contends that after being released and moving to Virginia, Ms. Rivera's father did not "allow her to attend school," "forced her to work as a maid," and "confiscated most of Ms. Rivera's earnings." *Id*. Ms. Rivera later fled from her father and obtained permanent residency via a T visa (for survivors of human trafficking), in 2023.  *Id.* ¶ 15.  When her application for permanent residency was approved, USCIS notified Ms. Rivera that she had a pending removal order against her, because she was "either subject to a final order of removal, exclusion, or deportation issued by an immigration judge" or "the Board of Immigration Appeals," or "in active removal proceedings." *Id.* ¶ 16.

On April 26, 2023, Plaintiff submitted a FOIA request to EOIR requesting "a copy of our client's old removal order. USCIS issued us a letter stating an old removal order exists under her current A number from October 21, 2013 in Washington, DC. (Date Range for Record Search: From 10/21/2013 To 10/21/2013)." Defs.' Stmt. ¶¶ 1, 3.  On April 27, 2023, EOIR informed Plaintiff that no records were located.  *Id.* ¶ 6.  On May 24, 2023, Plaintiff appealed the determination.  *Id.* ¶ 7.  On August 3, 2023, the Office of Information Policy affirmed that EOIR was unable to find any records and that they had conducted an adequate search.  *Id.* ¶ 8.

After EOIR received Plaintiff's April 22, 2024 Complaint, EOIR conducted an additional search within CASE using the provided alien number as well as Plaintiff's first and last names. Defs.' Stmt. ¶ 9. This search did not return any responsive records. *Id*. ¶¶ 10-12.

On May 24, 2023, Plaintiff submitted a FOIA request to ICE requesting Ms. Rivera's I-213 document (a record of a deportable or inadmissible alien) and removal order. *Id.* ¶ 14. On June 2, 2023, ICE referred the request to USCIS after determining that the relevant records were under USCIS's purview. Defs.' Stmt. ¶ 15. ICE proceeded with its own search for any responsive documents, yielding one document that the agency sent to Plaintiff on June 20, 2023. *Id.* ¶ 16, 28. The two pages produced by ICE are two pages of an ENFORCE Alien Removal Module ("EARM") report. *Id.* ¶ 27. Both pages of the EARM report produced by ICE were subject to partial withholdings. *Id.* ¶ 36. Certain information was withheld pursuant to FOIA Exemptions 6, 7(C), and 7(E). *id.* ¶¶ 37, 47.

USCIS referred the FOIA request from Plaintiff to ICE, determining that certain records would fall under its purview. Defs.' Stmt. ¶ 53. On June 19, 2023, USCIS responded to Plaintiff, identifying 353 responsive pages, 52 of which were partially redacted and three of which were entirely withheld. *Id.* ¶ 65. On October 4, 2023, Plaintiff filed an appeal challenging the redactions applied to the three pages of records that were withheld in full. *Id.* ¶ 77. On November 7, 2023, USCIS determined that the title of one of the fully withheld documents should be released and shared the document with Plaintiff, with the title showing. *Id.* ¶ 78.

## LEGAL STANDARD

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it can affect the substantive outcome of the litigation. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248; *see also Scott v. Harris*, 550 U.S. 372, 380 (2007);

*Holcomb*, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (cleaned up). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). Summary judgment is only proper when the court is assured that the record justifies the result. *See Ctr. for Investigative Reporting v. Customs & Border Prot.*, 436 F. Supp. 3d 90, 100 (D.D.C. 2019).

**ARGUMENT**

**I.    Defendants Conducted Adequate Searches**

EOIR, ICE, and USCIS fulfilled their obligations to search for records responsive to Plaintiff's FOIA requests because each agency's search was reasonably calculated to uncover responsive records.  An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents. *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 325-26 (D.C. Cir. 1999).  A FOIA search is sufficient "if the agency makes 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Baker & Hostetler LLP v. Dep't of Com.*, 473 F.3d 312, 318 (D.C. Cir. 2006) (quoting *Nation Mag. v. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)).  This standard of reasonableness "depends, not surprisingly, on the facts of each case."  *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *see also Steinberg v. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994); *Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015) ("This court applies a reasonableness standard to determine whether an agency performed an adequate search.").  A search is not inadequate merely because it failed to "uncover[] every document extant."  *SafeCard Servs.*, 926 F.2d at 1201; *see also Oglesby v. Dep't of Army*, 920 F.2d 57, 68 n.13 (D.C. Cir. 1990) (rejecting argument that a search was inadequate because it did not uncover "documents that [plaintiff] claims must exist"); *Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (noting that "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured").  Indeed, "[t]he question is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was adequate." *Steinberg*, 23 F.3d at 551 (emphasis in original) (quoting *Weisberg*, 745 F.2d at 1485); *see also Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (explaining that the adequacy of a search "is generally determined

- 5 -

not by the fruits of the search, but by the appropriateness of the methods used to carry out the search").

The agency bears the burden of showing that its search was calculated to uncover relevant records. An agency may establish the adequacy of its search by submitting reasonably detailed, nonconclusory affidavits describing its efforts. *Baker & Hostetle*, 473 F.3d at 318. It is not obligated to "set forth with meticulous documentation the details of an epic search for the requested records." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents. *SafeCard Servs.*, 926 F.2d at 1200, 1201 ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."). Absent contrary evidence, agency affidavits are sufficient to demonstrate the agency's compliance with FOIA. *See Perry*, 684 F.2d at 127.

Here, there can be little doubt that Defendants' searches were reasonably calculated to uncover responsive documents:

### A.    EOIR's Search

EOIR conducted a search of its Case Access System ("CASE"), which is the electronic manager for the EOIR immigration courts, Board of Immigration Appeals, and staff to support case management, using Ms. Rivera's noncitizen file number as a search term and found no records. *See* Broussard Decl. at 4 n.5; *id.* at ¶ 18 *see also* Defs.' Stmt. ¶¶ 4-6. This search was reasonable considering Plaintiff's request was for "a copy of" Ms. Rivera's "old removal order," and considering the request contained a copy of a USCIS correspondence dated February 14, 2023, which included Ms. Rivera's "alien number." *Id.* ¶ 4. No records were located. After receiving Plaintiff's complaint, EOIR again conducted a search of its file system. *See id.* ¶¶ 9-12. A search

using Ms. Rivera's file number again resulted in no records. *See id.* ¶ 10. A search using Ms. Rivera's first name, Areccy, again yielded no records. *See id.* ¶ 11. A search using Ms. Rivera's last name yielded a few results, none of which matched her full name or file number. *See id.* ¶ 12. Finally, EOIR "searched all locations likely to contain responsive documents." *Id.* ¶ 13. Because EOIR tasked its searches based on the plain language of the request and information contained by Ms. Rivera, its search was reasonable and should be upheld.

    **B.**    **ICE's Search**

       ICE tasked two relevant offices with searches for the requested records: the Office of Enforcement and Removal Operations ("Enforcement and Removal") and the Office of Homeland Security Investigations ("Investigations"). *See* Pineiro Decl. ¶ 7. Enforcement and Removal, which is charged with overseeing operations to identify and apprehend removable noncitizens (*id.* ¶¶ 16, 17), conducted a search in its file system for relevant records using Ms. Aguilar Rivera's name, noncitizen file number, and date of birth as search terms. *See id.* at ¶ 19. Enforcement and Removal found one document, including two pages of potentially responsive records, which they forwarded to the ICE FOIA office for processing. *See id.* ICE released the document to Plaintiff on June 20, 2024 with proper withholdings, as explained below. *Id.* at ¶ 9. Investigations, which is charged with investigating a range of activities related to the illegal movement of people and goods within and outside of the United States, conducted a search in its file system for relevant records using Ms. Rivera's name and noncitizen file number as search terms. *See id.* at ¶ 20-22. The office of Investigations found no responsive records. *See id.* Further, as Mr. Pineiro avers, "all locations likely to contain responsive records to Plaintiff's FOIA requests were searched." *Id.* ¶ 15. ICE therefore conducted an adequate search.

C.     **USCIS's Search**

USCIS conducted a search of its database of A-files—a series of records documenting a person's immigration history—using Ms. Rivera's A-file number provided in the FOIA request as a search term.  *See* Baxley Decl. ¶¶ 7, 10.  USCIS staff reasonably believed, based on their substantial experience with FOIA and USCIS databases, that the requested documents (I-213 form and removal order) would be in the A-file, if they existed.  *See id.* ¶ 10.  An A-file documents noncitizens' interactions with agencies such as USCIS, typically including the I-213 form ("Record of Deportable/Inadmissible Alien") and any removal orders, which are formal court orders issued by an immigration judge.  *See id.* ¶ 11.  However, because USCIS does not handle immigration enforcement, it would not have enforcement files such as removal orders that are not in an individual's A-file.  *See id.*  USCIS's search yielded Ms. Rivera's A-file, including an I-213 form, but not including any removal orders.  *See id.* ¶ 12.  Though Plaintiff requested only the I-213 form and a removal order, USCIS released the entire A-file to Plaintiff on July 19, 2023, including 298 pages in their entirety and 52 pages in part.  *See id.* ¶¶ 12-13.  USCIS withheld three pages based on exemptions, as discussed below.  *See id.*  Upon appeal, USCIS determined that it was appropriate to release the title of one of the withheld pages and released the document with the title to Plaintiff.  *See id.* ¶ 19.  In summary, USCIS fulfilled Ms. Aguilar Rivera's request for the I-213 form and has no record of the requested removal order.  *See id.* ¶ 12.

Plaintiff believes that Defendants' searches were deficient because none of the agencies produced a copy of Ms. Aguilar Rivera's "old removal order." But ICE produced a record titled, "ENFORCE Alien Removal Module (EARM) Database Report," which demonstrates that no removal order was ever issued. *See* Ex. 4. Indeed, it shows that under the "charge" of "alien removal" the disposition was "not sustained." And under the "encounter" section which indicates

a October 19, 2013 date of apprehension, the disposition was "warrant of arrest/notice to appear." There is no mention of a removal order, and it is clear that the charge of removal was never sustained. Thus, the fact that none of the agencies produced a removal order is consistent with their searches because no removal order exists. While the search results may be unsatisfying for Plaintiff, Defendants met their obligations.   FOIA requires only that Defendants conduct reasonable searches.  *See Steinberg*, 23 F.3d at 551 ("The question is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was adequate.").   By searching as they did, Defendants made a good faith effort to search for responsive records, and ICE and USCIS turned responsive records over to Plaintiff.  *See Budik v. Dep't of Army*, 742 F. Supp. 2d 20, 30 (D.D.C. 2010) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.") (quoting *Oglesby*, 920 F.2d at 68). "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."   *Iturralde*, 315 F.3d at 315. Importantly, Plaintiff does not identify any other locations where responsive records are likely to exist.

Further still, each agency has produced a declaration, which is entitled to a presumption of good faith, *SafeCard Servs.,* 926 F.2d at 1200, that all locations likely to contain responsive records have been searched. Defendants' searches are therefore adequate, and judgment as a matter of law should be entered in their favor. *See Bartko v. Dep't of Just.*, 164 F. Supp. 3d 55, 64 (D.D.C. 2016) (finding that "[defendant] has . . . fully described that methodology in two affidavits and, most importantly, has incanted the 'magic words' concerning the adequacy of the search – namely, the assertion that [it] searched all locations likely to contain responsive documents"); *Jud. Watch Inc.,*

*v. Dep't of Just.*, 319 F. Supp. 3d 431, 439-40 (D.D.C. 2018) (finding agency declarations "provide[d] sufficient detail about the scope and method [of] the [agency's] search for responsive records, the type of searches performed, who performed the searches, and what search terms were used.").

## II.    Defendants Properly Invoked FOIA Exemptions (b)(6), (b)(7)(C), & (b)(7)(E) and Privacy Act Exemption (k)(2)

### A.    ICE and USCIS Properly Invoked FOIA Exemptions 6 and 7(C)

ICE withheld personally identify information pursuant to FOIA Exemption 6, and USCIS withheld personal law enforcement information pursuant to Exemption 7(C). As both the Pineiro and Baxley declarations demonstrate, when considered in conjunction with each agency's *Vaughn* index, ICE and USCIS's withholdings were appropriate. The Court should therefore uphold their withholdings and enter judgment in their favor.

Personal privacy interests are protected by two provisions of the Freedom of Information Act, Exemptions 6 and 7(C). Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Its application is not limited to "a narrow class of files containing only a discrete kind of personal information[,]" but was "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982). Consequently, its "protection not only relates to entire physical files, but also encompasses bits of personal information that refer to a particular individual, including such items as a person's name." *Willis v. FBI*, Civ. A. No. 17-1959 (KBJ), 2019 WL 2138036, at *7 (D.D.C. May 16, 2019) (cleaned up). Exemption 7(C), conversely, is limited to information compiled for law enforcement purposes and protects personal information when disclosure "could reasonably be expected to

constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Under both personal privacy exemptions of the FOIA, the concept of privacy not only encompasses that which is inherently private, but also includes an "individual's control of information concerning his or her person." *Reps. Comm.*, 489 U.S. at 763.

Both provisions require agencies and reviewing courts to "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Beck v. Dep't of Just.*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting *Davis v. Dep't of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992)). That balance, however, tilts more strongly toward nondisclosure in the context of Exemption 7(C) because "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6." *Reps. Comm.*, 489 U.S. at 756. The Court should begin its analysis with the question of whether any responsive documents would necessarily constitute law-enforcement records to trigger Exemption 7(C)'s lower withholding threshold. *See Nova Oculus Partners, LLC v. SEC*, 486 F. Supp. 3d 280, 288 (D.D.C. 2020) ("When an agency invokes both exemptions, courts 'focus' on Exemption 7(C) because it 'establishes a lower bar for withholding material.'" (quoting *CREW v. Dep't of Just.*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014))).

With regards to ICE, Mr. Pinero explains that ICE withheld information under Exemption 6 and 7(C) on one page of its release, a document identified as "ENFORCE Alien Removal Module (EARM) Database Report." *See* ICE *Vaughn* Index; Defs.' Stmt. ¶ 27. The redacted information at issue in this case was compiled by ICE to assist in an investigation and relates to ICE's obligation to enforce the immigration laws of the United States by investigating, detaining, and pursing removal proceedings against noncitizen individuals who may be illegally present in the United States. Pineiro Decl. ¶ 32; Defs.' Stmt. ¶¶ 37-38. Thus, all information responsive to Plaintiff's

records request withheld under Exemptions 6 and 7(C) were compiled for law enforcement purposes, therefore meeting the lower threshold under Exemption 7(C). *Id.* Here, ICE applied FOIA Exemption 6 in conjunction with Exemption 7(C) to protect from disclosure government employee identifiers that are found in the documents. *Id.* ¶ 33; *see also Vaughn* Index at 1. As Mr. Pineiro explains, the federal employees referenced in the responsive records assist ICE with its law enforcement mission. *Id.* ¶ 34. ICE recognizes that these federal employees have privacy interests in not becoming targets of harassment by individuals who may begrudge them and in remaining free of interference in the performance of their duties by persons who are currently of interest to law enforcement or who oppose ICE mission. *Id.* Further, public identification of the government employees could also subject them to personal requests for access to law enforcement information or requests for information about ongoing or closed investigations. *Id.* ¶ 35.

Having determined that the individuals identified in the responsive records have a cognizable privacy interest in not having their information released, ICE FOIA then balanced the interest in safeguarding the individual's privacy from unnecessary public scrutiny against the public's interest in the disclosure of the information for purposes of shedding light on the operations and activities of ICE in the performance of its statutory duties. *Id.* ¶ 36. In each instance where Exemptions 6 and 7(C) were applied, the redaction was limited to the name of the individual or other personally identifiable information. This information, if released, would not shed further light as to the operations or activities of ICE. *Id.* Plaintiff has failed to articulate any public interest that could be advanced by releasing the personally identifiable information of the individual. *Id.*

As to USCIS, it withheld three pages of records in full, invoking Exemption 7(C), in part. *See* Baxley Decl. ¶¶ 16-17. As explained in USCIS's *Vaughn* Index, two records were withheld in full: (i) a "Intake Evaluation Form," *Vaughn* at 1, and (ii) "Notice of Rights and Request for

Disposition Form I-826." *Id*. at 2. As Mr. Baxley notes, as a general matter, Exemption 7(C) was applied to withhold personal information in law enforcement records, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. Baxley Decl. ¶ 17. As the accompanying *Vaughn* Index explains, regarding the "Intake Evaluation Form," this record is a copy an intake evaluation form that contains specific law enforcement questions and observations made by the evaluator while interviewing Ms. Rivera. *Vaughn* at 1. This record has interview notes and observations of Ms. Rivera, as well as information relating to a third party. *Id*. Pursuant to FOIA Exemption 7(C), the name and A-number pertaining to a third-party individual was redacted from this record. *Id*. Disclosure of a third-party individual's name and A-number could reasonably be expected to constitute an unwarranted invasion of the individual's personal privacy. *Id*. There is no inference that the information withheld by USCIS, namely, the name and A-number pertaining to a third-party individual, would shed any light on USCIS's activities or "what the Government is up to." *Dep't of Def. v. Fed. Lab. Rel. Auth.*, 510 U.S. 487, 497 (1994).

As to the second record, the Notice of Rights and Request for Disposition Form I-826 for a "third-party non-citizen," USCIS withheld "the name and other personally identifiable information pertaining to a third-party," *Vaughn* at 3; Defs.' Stmt. ¶¶ 81-83. Disclosure of a third-party individual's immigration records could reasonably be expected to constitute an unwarranted invasion of the individual's personal privacy. *Id*. While this third-party individual plainly maintains a weighty privacy interest in the confidentiality of their immigration records, Plaintiff can point to no public interest that favors disclosure. As to the limited identifying information withheld, including names of third parties that may appear in USCIS's files and names of third-party individuals, "mere confirmation" that these individuals' name appears in the agency's law-enforcement records could "engender comment and speculation and carries a stigmatizing

connotation." *Schrecker v. Dep't of Just.*, 349 F.3d 657 (D.C. Cir. 2003)). Regardless of the nature

of the records at issue, release of this information could function as an acknowledgment by either

USCIS or ICE that a connection exists between the Department and these individuals. These are

each valid and substantial privacy interests. *See, e.g., Reps. Comm.*, 489 U.S. at 780 (holding "as

a categorical matter that a third party's request for law enforcement records or information about

a private citizen can reasonably be expected to invade that citizen's privacy"). Indeed, "'third

parties'. . . mentioned in investigatory files maintain a privacy interest 'in keeping secret the fact

that they were subjects of a law enforcement investigation.'" *Bartko v. Dep't of Just.*, 167 F. Supp.

3d 55, 71 (D.D.C. 2016) (quoting *Nation Magazine v. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir.

1995)); *Martin v. Dep't of Just.*, 488 F.3d 446, 457 (D.C. Cir. 2007) ("We also note that privacy

interests are particularly difficult to overcome when law enforcement information regarding third

parties is implicated."). For that reason, USCIS is permitted "to withhold information identifying

private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to

confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Schrecker*,

349 F.3d at 661 (quoting *SafeCard*, 926 F.2d at 1206); *see also Concepcion v. FBI*, 606 F. Supp.

2d 14, 42 (D.D.C. 2009) (upholding the redaction of information under Exemption 7(C) "that could

possibly identify [the source], including dates and places where he/she has been"); *Singh v. FBI*,

574 F. Supp. 2d 32, 49 (D.D.C. 2008) (upholding the redaction of information that "would allow

a person familiar with the facts and circumstances of the investigation to identify the individuals").

　　　　As established above, the investigative materials withheld in response to Plaintiff's FOIA

request fall comfortably within the records "compiled for law enforcement purposes." *See

Jefferson v. Dep't of Just.*, 284 F.3d 172, 176–77 (D.C. Cir. 2002). As noted above, the records at

issue pertain to investigative materials compiled during a law enforcement investigation to enforce

immigration laws. "Courts generally afford some deference to agencies specializing in law enforcement that claim their records are eligible for Exemption 7(C) protection." *Lindsey v. FBI*, 490 F. Supp. 3d 1, 17 (D.D.C. 2020) (cleaned up). Similarly, the D.C. Circuit has upheld the withholding of information contained within an agency's investigative files, such as here. "[A]n agency's investigation of its own employees is for 'law enforcement purposes' if it focuses directly on specifically alleged illegal acts, illegal acts of particular identified officials, [or] acts which could, if proved, result in civil or criminal sanctions." *Kimberlin v. Dep't of Just.*, 139 F.3d 944, 947 (D.C. Cir. 1998).

The weighty privacy interests also weigh in favor of withholding. In this context, the "FOIA requester must (1) 'show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) 'show the information is likely to advance that interest.'" *Boyd v. Dep't of Just.*, 475 F.3d 381, 386–87 (D.C. Cir. 2007) (quoting *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004)). Further, "[i]f the public interest is [in exposing] government wrongdoing, then the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* (cleaned up). But Plaintiff cannot establish that the "public interest" sought to be advanced is a significant one; rather, there is no dispute that the information withheld under Exemptions 6 and 7(C), to include names, identifiers and other personally identifying information of Government employees, would provide little insight into what the Government is up to. It is apparent the information sought is for Plaintiff's benefit rather than benefit writ large, and Plaintiff is unable to demonstrate that release of this limited information would likely advance any public interest. Substantial privacy interests cognizable under the FOIA are generally found to exist in personally identifying information such as a person's name, physical

address, email address, image, computer user ID, phone number, date of birth, criminal history, medical history, and social security number. *Wash. Post*, 456 U.S. at 600 (finding that "[i]nformation such as place of birth, date of birth, date of marriage, employment history, and comparable data is not normally regarded as highly personal, and yet . . . such information . . . would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy"). These factors plainly tip in favor of Defendants.

**B.     ICE and USCIS Properly Invoked Exemption 7(E)**

ICE and USCIS partially withheld certain information under FOIA Exemption 7(E). Because there is no dispute that the withheld information constitutes techniques and procedures for sensitive law enforcement investigations, or information that would disclose guideline for investigations or prosecutions and where such disclosure could reasonably be expected to risk circumvention of the law, Defendants are entitled to judgment as a matter of law.

Exemption 7(E) permits withholding if production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). To properly invoke Exemption 7(E), then, the agency must satisfy two requirements: it must show first that the record was compiled for law-enforcement purposes and second that production would disclose either techniques and procedures for law-enforcement investigations or guidelines for law-enforcement investigations that would risk circumvention of the law. *Gun Owners of Am. v. FBI*, Civ. A. No. 22-3379 (JEB), 2024 WL 195829, at *2 (D.D.C. Jan. 18, 2024).

To start, there is little doubt left as to the underlying rationale for compiling the records at issue: they are investigative materials compiled during an investigation into potential violations of

U.S. immigration laws. *See* Pineiro Decl. ¶ 32, 44; Baxley Decl. ¶ 17; USCIS *Vaughn* at 2-3. ICE

and USCIS easily clear this first hurdle.

Next, disclosure of the information withheld under Exemption 7(E) would reveal law-

enforcement techniques, including withholdings reflecting national security implications,

intelligence sources and methods, and information that is "predominantly internal in nature," and

could "risk circumvention of agency regulations or statutes." *See e.g.,* ICE *Vaughn* at 2; USCIS

*Vaughn* at 2-3. The Government faces a "low bar" to show that it has properly withheld documents

containing law-enforcement techniques and procedures, *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C.

Cir. 2011), but must nevertheless provide sufficient facts and context to allow the reviewing court

to "deduce something of the nature of the techniques in question." *Clemente v. FBI*, 741 F. Supp.

2d 64, 88 (D.D.C. 2010).

In this case, ICE withheld information under 7(E) to protect "law enforcement codes, law

enforcement system checks, sensitive law enforcement techniques, and unique to ICE, personal

identification numbers and other investigative information that was gathered during the

investigation." Pineiro Decl. ¶ 39; *see also* ICE *Vaughn* at 2. As Mr. Pineiro explains, the release

of this information could reveal techniques or procedures for law enforcement investigation,

prosecutions, or guidelines which could reasonably be expected to risk circumvention of the law.

*Id*. Disclosure of this information could reveal law enforcement techniques used to apprehend

criminal aliens engaged in unlawful activities. *Id*. This information serves no public benefit and

would not assist the public in understanding how the agency is carrying out its investigatory

responsibilities. *Id*.

Similarly, as to the "Intake Evaluation Form," which USCIS describes as containing

"specific law enforcement questions and observations made by the evaluator while interviewing

- 17 -

Ms. Rivera," USCIS withheld "the specific questions that immigration officers ask when a non-citizen is detained and the specific reactions that immigration officers are instructed to observe during these interviews" as they "would reveal law enforcement techniques and procedures, and enable individuals to circumvent the law." USCIS *Vaughn* at 2. As to the second record in USCIS' possession, Notice of Rights and Request for Disposition Form I-826 relating to a third party, USCIS withheld "allegations of a third-party non-citizen being present in the United States illegally and his response to a request for disposition." USCIS *Vaughn* at 3. The withheld information could reveal techniques and/or procedures for law enforcement investigations or prosecutions or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. *Id.*

In the context of Exemption 7(E), because the exemption already requires a showing of risk of circumvention of the law, no further foreseeable-harm analysis is necessary. *See 100 Reps. v. Dep't of State*, 602 F. Supp. 3d 41, 83 (D.D.C. 2022) (explaining that foreseeable-harm requirement is similar and does not heighten Exemption 7(E)'s circumvention-of-law requirement); *Buzzfeed, Inc. v. Dep't of Homeland Sec.*, 610 F. Supp. 3d 139, 148 n.1 (D.D.C. 2022) ("[N]o further foreseeable harm analysis is needed because Exemption 7(E) by its own terms already requires that an agency show a risk of foreseeable harm." (cleaned up)); *Gun Owners*, 2024 WL 195829, at *4.

Accordingly, the Court should uphold Defendants' redactions pursuant to Exemption 7(E).

### C.    USCIS Properly Invoked Privacy Act Exemption (k)(2)

As explained below, USCIS appropriately applied Privacy Act Exemption (k)(2) to withhold three pages in full, warranting judgment in its favor.

Pursuant to 5 U.S.C. § 552a(k), "The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of [certain sections] of this title, to

exempt any system of records within the agency from [certain subsections] of this section if the system of records is investigatory material compiled for law enforcement purposes, other than material within the scope of subsection (j)(2) of this section." Exemption (k)(2) further recognizes "That if any individual is denied any right, privilege, or benefit that he would otherwise be entitled by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section [September 27, 1975], under an implied promise that the identity of the source would be held in confidence[.]"5 U.S.C. § 552a(k)(2). "Exempted" from the system includes, "Investigatory material compiled for law enforcement purposes, other than material within the scope of subsection 5 U.S.C. § 552a(j)(2)," which may be exempt pursuant to 5 U.S.C. § 552a(k)(2).

Department of Homeland Security regulations further confirm that information contained within a noncitizen's file is exempt from disclosure. Personal data contained in the responsive records are located within the DHS/USCIS-ICE-CBP-001- Alien File, Index, and National File Tracking System of Records 78 Fed. Reg. 69864 (November 21, 2013), available at https://www.federalregister.gov/documents/2013/11/21/2013-27895/privacy-act-of-1974-department-of-homeland-security-us-citizenship-and-immigration-services-us (last visited Oct. 15, 2024). The System of Records Notice governing the records contained in this system exempts the records from certain access provisions, to protect personal privacy interests.

On this score, the Court starts its inquiry by determining whether the challenged record adequately falls into the "law enforcement" bucket. *Doe v. FBI*, 936 F.2d 1346, 1353 (D.C. Cir.

1991). The material must be compiled for some investigative "law enforcement" purpose, such as a civil investigation or a criminal investigation by a non-principal function criminal law enforcement agency. *See* OMB 1975 Guidelines, 40 Fed. Reg. at 28,972-73, https://www.justice.gov/paoverview_omb-75 (last accessed July 11, 2024). In making this determination, the D.C. Circuit has adopted the test devised in *Pratt v. Webster*, 673 F.2d 408, 420-21 (D.C. Cir. 1982), in evaluating the application of FOIA Exemption 7. As the D.C. Circuit noted, the *Pratt* test "adapts well to the Privacy Act context because the language of subsection (k)(2), the more inclusive of the Act's two exemption provisions, is virtually identical to that of FOIA Exemption 7: subsection (k)(2) applies to systems of records containing "investigatory material compiled for law enforcement purposes," while Exemption 7 encompasses "investigatory records compiled for law enforcement purposes." *Doe*, 936 F.2d at 1353 (citing *Vymetalik v. FBI*, 785 F.2d 1090, 1095 (D.C. Cir. 1986)).

Under the *Pratt* test, records kept by a law enforcement agency must meet two criteria to qualify as law enforcement records. First, "the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security." *Pratt*, 673 F.2d at 420 (emphasis in original omitted). An agency does not satisfy this requirement when "merely engaging in a general monitoring of private individuals' activities"; rather, the agency must demonstrate a connection between its investigation and the existence of a "possible security risk or violation of federal law." *Id.*; *cf. Shaw v. FBI*, 749 F.2d 58, 64–65 (D.C. Cir. 1984) (Scalia, J.) (exemption extends to investigation, conducted for "federally authorized purpose," of non-federal crime).

Second, "the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least 'a colorable claim' of its

rationality." *Pratt*, 673 F.2d at 421 (emphasis removed). This second requirement is "deferential to the particular problems of a criminal law enforcement agency"; while it is not met where the agency offers a "pretextual or wholly unbelievable" basis for a claim that its investigation was rationally related to its law enforcement duty, a reviewing court "should be hesitant to second-guess a law enforcement agency's decision to investigate if there is a plausible basis for its decision." *Id*. When an agency meets both prongs of the *Pratt* test, the burden shifts to the plaintiff to produce evidence that the asserted law enforcement rationale for an investigation was in fact pretextual. *See Shaw*, 749 F.2d at 63–64. If the plaintiff fails to rebut the showing of law enforcement purpose, the agency is entitled to summary judgment. *See King v. Dep't of Just.*, 830 F.2d 210, 231–32 (D.C. Cir. 1987).

In this case, the investigatory materials Plaintiff seeks comfortably fall within the purview of Exemption (k)(2). It is undisputed that Plaintiff's request sought records relating to her removal order as well as her I-213 document, which is a "Record of Deportable/Inadmissible Alien," prepared by the Department of Homeland Security before instituting removal proceedings. Compl. ¶¶ 19, 20, 26. These types of documents comfortably fall within the definition of investigatory materials until Exemption (k)(2). *See e.g., Montenegro v. FBI*, Civ. A. No. 16-1400, 2017 WL 2692613 (E.D. Va. June 22, 2017) (holding that U.S. Immigration and Customs Enforcement properly withheld information contained in Alien file, Index, and National File Tracking system).

As USCIS's *Vaughn* index demonstrates, Exemption (k)(2) was applied on the first record to "the interview answers, impressions, and notes from the intake form," and for the second record, "third-party response to a notice of rights," *see Vaughn* index at 2-3; Defs.' Stmt. ¶ 80, 86. This information is material that was compiled during the pendency of a law enforcement investigation. *Id*.

In sum, USCIS appropriately withheld certain investigatory law enforcement materials under Privacy Act Exemption (k)(2), warranting judgment in its favor.

## III.    <u>Defendants Met Their Segregability Burden</u>

The Court last looks at segregability. FOIA requires that "[a]ny reasonably segregable portion of a record. . . be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The "focus of the FOIA" is thus on "information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). It naturally follows that "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Id.*

USCIS and ICE's declarants attest that they conducted a segregability analysis. As to ICE, Mr. Pineiro confirms that, "a line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could and should be applied," Pineiro Decl. ¶ 42. He further avers that "With respect to the records that were released, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released. ICE did not withhold any non-exempt information on the grounds that it was non-segregable." *Id.* ¶ 43. Similarly, Mr. Baxley attests on behalf of USCIS that "After a page-by-page, line-by-line review of this law enforcement record, conducted by USCIS FOIA staff, USCIS has determined that all reasonably segregable, non-exempt information that can be disclosed from this record were disclosed." Baxley Decl. ¶ 20; USCIS *Vaughn* index at 2-3.

Where non-exempt portions of the withheld and redacted documents "are inextricably intertwined with exempt portions" they need not be further segregated. *See Mead Data*, 566 F.2d at 260. An agency is not obligated to segregate non-exempt material if "the excision of exempt

information would impose significant costs on the agency and produce an edited document with little informational value." *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981). Even if the Court were to order the agency to disclose additional phrases, or even documents, it would take Ms. Aguilar Rivera no closer to her actual goal of discovering information regarding her removal order. *See also Mead Data*, 566 F.2d at 261 n.55 ("[A] court may decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content.").

Accordingly, Defendants are entitled to judgment as a matter of law, as they conducted an appropriate segregability analysis.

## CONCLUSION

For the reasons set forth in this memorandum and the accompanying declarations and exhibits, Court should enter judgment in Defendants' favor.

Dated: October 21, 2024
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:  */s/ Brenda González Horowitz*
     BRENDA GONZÁLEZ HOROWITZ
     Assistant United States Attorney
     601 D Street, NW
     Washington, DC 20530
     (202) 252-2512

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AYUDA, INC.,

       Plaintiff,

   v.

DEPARTMENT OF HOMELAND
SECURITY, et al.,

       Defendant.

Civil Action No. 24-1153 (JMC)

## [PROPOSED] ORDER

UPON CONSIDERATION of Defendants' Motion for Summary Judgment, the memoranda in support thereof, any opposition thereto, and the entire record herein, it is hereby

ORDERED that Defendants' motion is GRANTED, and it is further

ODERED that summary judgment is entered in favor of Defendants.


SO ORDERED:


_____
Date

_____
JIA M. COBB
United States District Judge